UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE RICHARDS,

    Petitioner,

                                         CASE NO. 4:13-CV-13763
v.                                JUDGE TERRENCE G. BERG
                                           MAGISTRATE JUDGE PAUL J. KOMIVES

MARY BERGHUIS,

    Respondent.
                                   /

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    D.    *Jury Discussion (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    E.    *Adverse Inference Instruction (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    F.    *Shackles (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

    1.    Petitioner Maurice Richards is a state prisoner, currently confined at the Ernest C. Brooks Correctional Facility in Muskegon Heights, Michigan.

2. On May 15, 2009, petitioner was convicted of carjacking, MICH. COMP. LAWS § 750.529a; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Macomb County Circuit Court. On June 30, 2009, he was sentenced to a term of 8-25 years' imprisonment on the carjacking conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. THE TRIAL COURT VIOLATED MAURICE RICHARDS' DUE PROCESS RIGHT TO TRIAL BY AN IMPARTIAL JURY WHEN IT ALLOWED JURORS TO DISCUSS THE CASE WITH ONE ANOTHER BEFORE THE COMPLETION OF TRIAL.
>
> II. THE TRIAL COURT DEPRIVED MAURICE RICHARDS OF HIS RIGHT TO A FAIR TRIAL AND PRESUMPTIVE INNOCENCE WHEN IT INFORMED THE JURY THAT IT COULD DRAW AN ADVERSE INFERENCE FROM THE DEFENDANT'S FAILURE TO PRODUCE THE TESTIMONY OF DORIAN PITTMAN.
>
> III. THE TRIAL COURT DEPRIVED MAURICE RICHARDS OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS BY REQUIRING HIM TO WEAR LEG SHACKLES THROUGHOUT HIS ENTIRE JURY TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. Richards*, No. 293285, 2010 WL 4103538 (Mich. Ct. App. Oct. 19, 2010) (per curiam).

4. Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court initially granted leave to appeal, limited to petitioner's first issue. *See People v. Richards*, 489 Mich. 924, 797 N.W.2d 134 (2011). The court subsequently vacated this order and denied leave to appeal, because it was "no longer persuaded that the questions presented should be

reviewed by this Court." *People v. Richards*, 491 Mich. 855, 809 N.W.2d 148 (2012).[1]

     5.    Petitioner filed a petition for writ of *certiorari* in the United States Supreme Court. On October 1, 2012, the Supreme Court denied the petition. *See Richards v. Michigan*, 133 S. Ct. 219 (2012).

     6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 4, 2013. As grounds for the writ of habeas corpus, he raises the three claims that he raised in the state courts.

     7.    Respondent filed her answer on March 10, 2014. She contends that a portion of petitioner's first claim and petitioner's second claim are barred by petitioner's procedural default in the state courts, and that all of his claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

    The factual background leading to petitioner's conviction was accurately summarized by the Michigan Court of Appeals:

> On January 4, 2009, defendant took the complainant's 2008 Dodge Charger from a gas station in Warren. The prosecution's theory at trial was that the defendant approached the complainant and demanded his keys, and that the complainant conceded only after defendant motioned toward a gun in the waistband of defendant's pants. The defense theory at trial was that defendant could not have possessed a gun because the police had performed a pat down search on him and a companion, Dorian Pittman, minutes earlier and did not find a gun. The defense conceded that defendant drove away in the complainant's car and argued that, at most, defendant was guilty only of unlawfully driving away an automobile.

*Richards*, 2010 WL 4103538, at *1.

C.    *Standard of Review*

---

[1] Justices Kelly and Hathaway each dissented, concluding that the trial court's instruction allowing the jury to discuss the case prior to deliberations violated petitioner's right to due process and an impartial jury. Justice Young issued a concurring opinion, explaining his view that the instruction did not violate petitioner's constitutional rights.

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent

4

'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was

5

before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Jury Discussion (Claim I)*

Petitioner first contends that he was denied his right to an impartial jury when the jurors were permitted to discuss the evidence prior to deliberations. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

At the time of petitioner's trial, the trial judge in his case participated in a pilot project to evaluate various jury reform proposals. Established by the Michigan Supreme Court's Administrative Order No. 2008-2, 482 Mich. lxxxix (2008), the purpose of the project was to "determine whether, and in what way, the proposed jury-reform amendments support the goal of meaningful juror participation, and lead to greater confidence in the validity of the specific verdict and the overall jury system." *Id*. at lxxxix. The judges participating in the program were directed to operate under various amendments to the Michigan Court Rules through December 31, 2010, with the expectation that they

would "apply these rules to the greatest extent possible as a way to test and assess all of the proposed ideas." *Id*. As relevant to petitioner's claims, the project amended Rule 2.513 to provide:

> (K) Juror Discussion. After informing the jurors that they are not to decide the case until they have heard all the evidence, instructions of law, and arguments of counsel, the court may instruct the jurors that they are permitted to discuss the evidence among themselves in the jury room during trial recesses. The jurors should be instructed that such discussions may only take place when all jurors are present and that such discussions must be clearly understood as tentative pending final presentation of all evidence, instructions, and argument.

*Id*. at xcv-xcvii (amending, for project participants, MICH. CT. R. 2.513(K)). At the conclusion of the program, a number of the proposals were codified in Rule 2.513. The proposal concerning juror discussion was codified only with respect to civil cases. *See* MICH. CT. R. 2.513. Petitioner contends that the trial court's use of the procedure set forth above deprived him of a fair trial and his right to an impartial jury. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

Noting that the trial court, in accordance with Rule 2.513(K), gave extensive instructions to the jury regarding the circumstances in which preliminary discussions could occur and the use to be

---

[2]Respondent contends that the portion of this claim alleging denial of an impartial jury is procedurally defaulted. While procedural issues in a habeas case should ordinarily be resolved first, procedural default is not jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because it is clear that this claim is without merit, the Court may deny it on this basis without resolving respondent's procedural default argument.

Although this claim was only reviewed for plain error and could be considered defaulted, the Sixth Circuit has "squarely endorsed the view that 'a federal constitutional claim reviewed by a state court for "plain error" can be considered "adjudicated on the merits" for the purpose of receiving deference under AEDPA.'" *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n.2 (6th Cir. 2012) (quoting *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009)). Thus, the AEDPA standard of review applies to this claim.

made of such discussions,[3] the court of appeals rejected petitioner's claim. The Court reasoned:

> The trial court's instructions guarded against the jury making premature conclusions by emphasizing that any preliminary discussions were to be considered tentative only. The court also emphasized that the jurors were to keep an open mind throughout the trial, and that the jurors were not to decide any issue until after they heard all the evidence, the parties' arguments, and the court's instructions, and they were directed to begin deliberations. The jury would have also understood from the court's instructions that any views expressed by a given juror would be understood by the other jurors within the framework of these guidelines, thereby minimizing the potential for jurors to become locked into any preliminary opinions that might be expressed. In addition to the specific instructions regarding juror discussions, the trial court also instructed the jury that defendant was presumed innocent and that it must acquit defendant unless it was satisfied beyond a reasonable doubt of his guilt after consideration of all the evidence in the case. Jurors are presumed to follow their instructions. *People v. Abraham*, 256 Mich. App. 265, 279, 662 N.W.2d 836 (2003). Viewed as a whole, the trial court's instructions sufficiently protected defendant's right to have his case decided by a fair and impartial jury.
> We also reject defendant's unpreserved claim that the instruction violated his right to a fair trial because it improperly allowed alternate jurors who were not part of the final jury to exert their influence on the verdict. Although all jurors were permitted to participate in tentative discussions about the case during trial recesses, those discussions occurred before deliberations began, and a clear distinction was made between tentative discussions and the separate deliberations to reach a final decision.

*Richards*, 2010 WL 4103538, at *2-*3.

Petitioner cannot show that this determination resulted in a decision that was contrary to, or

---

[3]Specifically, the trial court instructed the jury, *inter alia*, that the jurors could discuss the evidence only when all jurors were present, and emphasized that "it's extremely important that you remember and clearly understood that any discussion you have are tentative until you've heard all the evidence, the instructions the court will give, and the argument by the attorneys." Trial Tr., dated 5/13/09, at 142. The trial court further emphasized this point, instructing:
> You must keep an open mind and not decide any issue in the case until you've heard all the evidence, all the instructions on the law, all the arguments of counsel, and until the court directs you to begin your deliberations. However, you may discuss the case among yourselves in the jury room during trial recesses when all of the jurors are present. Although you can discuss the evidence with your fellow jurors you must clearly understand that any such discussions are tentative pending final presentation of all evidence, instructions, and argument. I cannot stress how important it is for you to keep an open mind and to avoid forming opinions about the outcome of the case until I direct you to begin your deliberations.

*Id.* at 148.

an unreasonable application of, any clearly established federal law. The Supreme Court has never suggested, much less held, that the Constitution prohibits predeliberation discussions concerning the evidence. *Cf. Bell v. True*, 413 F. Supp. 2d 657, 716 (W.D. Va. 2006) ("Bell has not clearly articulated a federal constitutional right impaired by the alleged predeliberation."). Moreover, conducted under the circumstances permitted by the pilot project as reflected in the trial court's instructions to the jury in petitioner's case–namely that such discussions could only occur in the jury room with all jurors present, and with the clear understanding that such discussions were only preliminary[4]–there is nothing inherently unfair or prejudicial in allowing predeliberation discussions of the evidence. "In fact, there is evidence that predeliberation discussions enhance a jury's ability to reach a fairer and just result." *Richards*, 491 Mich. at 858, 809 N.W.2d at 150 (Young, C.J., concurring) (discussing David A. Anderson, *Let Jurors Talk: Authorizing Pre-Deliberation Discussion of the Evidence During Trial*, 174 MIL. L. REV. 92 (2002)); *see also*, Hon. B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated & Democratic Juries*, 68 IND. L.J. 1229, 1264-67 (1993). "Perhaps the logical next step . . . would be to hold that" predeliberation discussions violate the Constitution; "perhaps not. Either way, [the Supreme Court has] not yet taken that step, and there are reasonable arguments on both sides–which is all [respondent] needs to prevail in this AEDPA case." *White v. Woodall*, ___ S. Ct. ___, ___, 2014 WL 1612424, at *8 (Apr. 23, 2014). Because petitioner cannot show that the use of the pilot project was contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to habeas relief on this claim. *See Witkowski v. Rapelje*, No. 2:11-CV-14450, 2012 WL 7258857, at *23 (Dec. 21, 2012)

---

[4]The Court must presume that the jury followed these instructions. *See Shannon v. United States*, 512 U.S. 573, 585 (1994); *United States v. Olano*, 507 U.S. 725, 740 (1993) *Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985).

(Komives, M.J.), *magistrate judge's report and recommendation adopted*, 2013 WL 690495 (E.D. Mich. Feb. 26, 2013) (Hood, J.).

E.	*Adverse Inference Instruction (Claim II)*

Petitioner next claims that the trial court denied him his presumption of innocence and shifted the burden of proof by instructing the jury that it could draw an adverse inference from petitioner's failure to call Dorian Pittman as a witness. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[5]

1.	*Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4;

---

[5]Respondent contends that petitioner's claim is barred by his procedural default in the state courts. Because this claim is without merit, the Court may deny it on that basis without resolving respondent's procedural default argument. *See supra*, note 2.

*Boyde v. California*, 494 U.S. 370, 380 (1990).

"[T]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The state carries the burden of proving each and every element of a criminal offense beyond a reasonable doubt, and any conduct or instruction that shifts that burden to a defendant constitutes a violation of due process. *See Carella v. California*, 491 U.S. 263, 265 (1989); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979). Thus, the Due Process Clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt[.]" *Francis v. Franklin*, 471 U.S. 307, 313 (1985). However, an instruction which merely allows, but does not require, the jury to draw a permissive inference "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id*. at 314; *see also*, *County Ct. of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 157 (1979). "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis*, 471 U.S. at 314-15. Notwithstanding the burden of proof and presumption of innocence, a prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify. *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993); *United States v. Sensi*, 879 F.2d 888, 900 (D.C. Cir. 1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988). It is well "established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *Bautista*, 23 F.3d at 733; *accord United States v. Robles-Vertiz*, 155 F.3d 725, 731 (5th Cir. 1998).

2. *Analysis*

At trial, neither the prosecutor nor petitioner called Dorian Pittman, the man with petitioner at the time of the carjacking. During closing argument, defense counsel argued that the jury should in effect draw an adverse inference against the prosecution based on its failure to call Pittman, stating: "Folks, if Dorian Pittman had said that there was a gun, you can bet he would have been in court." Trial Tr., dated 5/15/09, at 24. The trial court overruled the prosecutor's objection to this argument, adding that "[w]e've already, I think, explained to the jurors . . . that neither side has requested his presence here . . . during this trial. And they can reach their own conclusions from that." *Id.* at 25. Petitioner contends that this statement instructed the jury to draw an adverse inference from his failure to call Pittman, and thus shifted the burden of proof and deprived him of his presumption of innocence. The Michigan Court of Appeals rejected this claim, reasoning:

> Contrary to what defendant argues, the trial court's comment was not the equivalent of a "missing witness" instruction, see CJI2d 5.12, whereby the jury was informed that it could infer from defendant's failure to call Pittman that Pittman's testimony would have been unfavorable to defendant. The court merely commented that "neither side" had requested Pittman's presence and that the jurors could draw their own conclusions from that. The comment did not favor a permissible inference for either party. Further, the trial court instructed the jury that defendant was presumed innocent, that the prosecution was required to prove defendant's guilt beyond a reasonable doubt, and that defendant was not required to offer any evidence or do anything to prove his innocence.

*Richards*, 2010 WL 4103538, at \*3. This determination was reasonable.

At the outset, as the court of appeals correctly observed the trial court's statement did not constitute a missing witness instruction at all. The statement was not an instruction to the jury, but a response to counsel's closing argument and the prosecutor's objection to that argument, and was not directed to the jury. At no point did the trial court indicate that the jury could draw an adverse inference against petitioner based on his failure to call Pittman. In any event, even if the trial court's

comment can be viewed as an adverse inference instruction, it did not violate petitioner's constitutional rights. As explained above, an instruction which merely permits an inference supported by the evidence does not run afoul of the Constitution, and a prosecutor to comment on a defendant's failure to call witnesses available to him. Thus, as a general matter "[t]he use of a missing witness instruction does not implicate any constitutional rights of a petitioner or shift the burden of proof." *Martinez v. Spencer*, 195 F. Supp. 2d 284, 308 (D. Mass. 2002). This is particularly so in a case such as this where, at most, the trial court's comment permitted the jury equally to draw an adverse inference against the prosecution or the defendant based on their failure to call Pittman. *See United States v. Caccia*, 122 F.3d 136, 140 (2d Cir. 1997) (instruction that, if jury found that uncalled witness was equally available to the government and the defendant, it could infer that the testimony might have been unfavorable to either the government or the defendant, or both, did not shift burden of proof or deprive defendant of the presumption of innocence); *United States v. Wazelle*, No. CR-F-04-5376, 2006 WL 2536610, at *11 (E.D. Cal. Aug. 31, 2006).

Finally, even if the trial court's comment was improper, petitioner cannot show that it deprived him of a fair trial. As explained above, the comment did not explicitly direct that the jury could draw an adverse inference against petitioner, and the comment occurred in response to an objection during closing argument, not in the instructions give to the jury. And in the instructions given to the jury, both at the start and at the conclusion of the trial, the court repeatedly instructed the jury on the prosecutor's burden of proof, petitioner's presumption of innocence, and petitioner's lack of any obligation to produce any evidence. *See* Trial Tr., dated 5/13/09, at 143; *id.*, dated 5/15/09, at 32, 33, 39-41. These instructions "adequately preserved the constitutional requirement that the burden of proof is never on the defendant." *Caccia*, 122 F.3d at 140. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Shackles (Claim III)*

Finally, petitioner contends that he was denied a fair trial by being shackled during the trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Clearly Established Law*

"The criminal process presumes that a defendant is innocent until proved guilty." *United States v. Larson*, 460 F.3d 1200, 1214 (9th Cir. 2006) (citing *Deck v. Missouri*, 544 U.S. 622, 630 (2005); *Estelle v. Williams*, 425 U.S. 501, 503 (1976)), *vacated in part on other grounds on reh'g en banc*, 495 F.3d 1094 (9th Cir. 2007). For this reason, "the Constitution prohibits any courtroom arrangement or procedure that 'undermines the presumption of innocence and the related fairness of the factfinding process.'" *Larson*, 460 F.3d at 1214 (quoting *Deck*, 544 U.S. at 630). The Supreme Court's cases "demontrate that [a court's] core concern in this area is to avoid any procedure that undermines the presumption of innocence by conveying a message to the jury that the defendant is guilty." *Larson*, 460 F.3d at 1215. The task for a reviewing court is determine whether "an unacceptable risk is presented of impermissible factors coming into play." *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986) (internal quotation omitted). The question is whether the courtroom arrangement was so inherently prejudicial that it branded the defendant with an "unmistakable mark of guilt." *See id.* at 571. An inherently prejudicial courtroom arrangement must be justified by an essential state interest; however, an arrangement which is not inherently prejudicial need not be justified by any state interest. *See Larson*, 460 F.3d at 1216. Appearing in shackles or similar restrains before the jury is inherently prejudicial, and "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck*, 544 U.S. at 626. The Court held in *Deck* that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court

14

determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." *Id*. at 629.

    2.    *Analysis*

Petitioner contends that he was shackled solely on the basis of his jail security classification, and not based on any specific state interest that he was a flight risk or a danger to persons in the courtroom. The Michigan Court of Appeals rejected petitioner's claim, concluding that there was nothing in the record to suggest that the jury actually observed petitioner in shackles. The court reasoned:

> The record discloses that the trial court recognized the importance of the jury not viewing defendant in restraints during trial and took steps to ensure that the jury would not see the shackles. The court stated that defendant was to be shackled only at his ankles, where "the shackles will be blocked by the table and so not in the jury's view throughout the trial." Further, the court ordered that defendant was not to be shackled during jury selection, when potential jurors would be seated behind defense counsel's table, and that defendant would be permitted to enter and leave the courtroom while the jury was not present. Defendant acknowledges that there is no evidence that any jurors saw him in shackles.

*Richards*, 2010 WL 4103538, at *4. This determination was reasonable.

*Deck* and its predecessors hold unconstitutional the routine use of "'*visible* restraints at trial.'" *Earhart v. Konteh*, 589 F.3d 337, 348 (6th Cir. 2009) (quoting *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008)) (emphasis added). Thus, even under *Deck* where a defendant is shackled in such a way that it is not visible to the jury, or where the jury briefly sees the defendant in shackles during transport to and from the courtroom, there is no denial of a fair trial. *See Williams v. Woodford*, 384 F.3d 567, 592-93 (9th Cir. 2004) (compiling cases); *see also*, *Deck*, 544 U.S. at (emphasis added) ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible* to the jury

15

absent a trial court determination . . . that they are justified by a state interest specific to a particular trial."). Here, the record amply supports the court of appeals's conclusion that the jurors never saw petitioner's shackles. The trial court took pains to ensure that petitioner's shackles were not visible to the jurors, and had the shackles removed when petitioner was visible to the jury venire during jury selection. Petitioner speculates that jurors might nevertheless have seen or heard the shackles during trial, but as petitioner himself concedes there is no evidence that any juror saw him in shackles. Because the court of appeals could reasonably conclude that no jurors saw petitioner in shackles, its rejection of petitioner's claim was not an unreasonable application of *Deck* and its predecessors. *See United States v. Miller*, 531 F.3d 340, 347-48 (6th Cir. 2008); *O'Connell v. Harrington*, 420 Fed. Appx. 746, 746 (9th Cir. 2011); *Pearl v. Cason*, 86 Fed. Appx. 858, 859 (6th Cir. 2008) Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Recommendation Regarding Certificate of Appealability*

   1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the

16

burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Petitioner has

17

failed to point to any clearly established federal law prohibiting a court from instructing the jury from discussing the case prior to deliberations, and thus the resolution of petitioner's first claim is not reasonably debatable. Because the trial court did not instruct the jury that it could draw an adverse inference from petitioner's failure to call Pittman as a witness, and because in any event such an instruction would not have shifted the burden of proof or deprived petitioner of his presumption of innocence, the resolution of petitioner's second claim is not reasonably debatable. Finally, because there is no evidence that any juror saw petitioner in shackles, the resolution of petitioner's third claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

H.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health*

*& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 6, 2014                         s/Paul J. Komives
                                                        PAUL J. KOMIVES
                                                        UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 6, 2014, electronically and/or by U.S. Mail.
                                                 s/Michael Williams
                                                 Case Manager to the
                                                 Honorable Paul J. Komives